UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| STEVEN D. FRANKS, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:19-CV-979-JD |
| | ) | |
| ANDREW M. SAUL, Commissioner of | ) | |
| Social Security | ) | |
| | ) | |
|     Defendant. | ) | |

## OPINION AND ORDER

Steven D. Franks applied for social security disability insurance benefits, alleging that he is unable to work primarily due to a heart condition (Long QT), defibrillator and pacemaker implantation, cardiac arrest, bradycardia, and broken ribs. Mr. Franks was found to be not disabled in a November 2018 decision. Mr. Franks filed this appeal, asking the Court to reverse the ALJ's decision and remand for further proceedings based on alleged errors with the residual functional capacity assessment. The Commissioner filed a response in opposition, and Mr. Franks filed a reply. As explained below, the Court affirms the Commissioner's decision.

**I.     Factual Background**

Until he stopped working, Mr. Franks worked as a press brake operator. Mr. Franks suffers from obesity, residuals from a myocardial infarction, hypertension, obstructive sleep apnea, defibrillator and pacemaker implantation, bradycardia, and cardiomyopathy. (R. 17).

Mr. Franks applied for benefits in 2016. The ALJ issued an unfavorable decision on November 16, 2018. In that decision, the ALJ made the following residual functional capacity:

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with exceptions. Specifically, the claimant is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours in an 8-hour workday and sit 6 hours in an 8-hour workday. He is never to

1

>climb ladders, ropes or scaffolds, but is occasionally able to climb ramps and stairs, and balance, stoop, kneel, crouch and crawl. The claimant is to avoid all exposure to hazards, such as moving mechanical parts and unprotected heights. Last, he is to avoid concentrated exposure to extreme cold and heat.

(R. 21-22). Finding that Mr. Franks could have performed other work in the economy, the ALJ found that he was not disabled. The Appeals Council declined review, and Mr. Franks filed this action seeking judicial review of the Commissioner's decision.

## II.     Standard of Review

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before

affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III.     Standard for Disability

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S. C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform past relevant work; and
5. Whether the claimant can perform other work in the community.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments

3

meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

**IV.      Discussion**

Mr. Franks offers one argument, consisting of twenty five factual disagreements, in support of reversal. He argues that the ALJ mischaracterized, manipulated, or ignored a good portion of the evidence in writing the decision. Broadly construing Mr. Franks' *pro se* claim, the Court considers the issue to be whether the ALJ properly supported the RFC determination and provided the requisite logical bridge from the evidence to the conclusion. The Court finds that the ALJ did not err in the RFC discussion.

In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, including testimony by the claimant, as well as evidence regarding limitations that are not severe. *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014) (citation omitted). An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his

4

findings. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). Nevertheless, an ALJ need not provide a written evaluation of every piece of testimony and evidence. *Golembiewski*, 322 F.3d at 917. Instead, an ALJ need only minimally articulate his justification for accepting or rejecting specific evidence of disability. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008); *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004).

Mr. Franks lists out evidence he alleges the ALJ somehow misrepresented in the decision. Each will be discussed in turn. First, Mr. Franks asserts that the ALJ erred in finding only one instance of back pain during the relevant period with no imaging, and therefore finding that his back impairments were a non-severe impairment. Mr. Franks cites to multiple treatment notes documenting his back pain, as well as some x-rays. Mr. Franks then asserts that later testing showed five bulging discs, arthritis, and a congenital defect in his lumbar spine. He argues that this evidence existed pre-hearing, but that the ALJ would not allow them to be submitted.

To the contrary, most of the evidence cited by Mr. Franks is outside of the relevant period. For instance, much of the evidence Mr. Franks points to is from 2014. (Tr. 401-420). He also points to evidence from 2018. (Tr. 1130-60, 1080-81). Similarly, the imaging Mr. Franks relies on is all from outside of the relevant period. The ALJ properly acknowledged that Mr. Franks suffered from low back pain in December 2016, but that it improved over the relevant period and was no more than an ache in his mid-thoracic area by January 2017. (Tr. 18). The ALJ found Mr. Franks' back pain to be a non-severe impairment, as there were no imaging studies during the relevant period. The ALJ went on to discuss Mr. Franks' back pain later in the decision, noting that his back pain was exacerbated by doing dishes and laundry. (Tr. 23).

However, the ALJ found that his mild complaints of pain did not result in a severe impairment. The ALJ properly supported this decision with medical evidence in the record, and Mr. Franks cannot rely on medical evidence well outside the relevant period. "The law requires that a claimant demonstrate his disability within the prescribed period of eligibility, not prior to nor subsequent to the dates in question." *Jeralds v. Richardson,* 445 F.2d 36, 39 (7th Cir. 1971). Mr. Franks asserts that the back impairments discovered after his date last insured were present, but milder during the relevant time period. However, a mild impairment does not guarantee disabling limitations. There is no evidence that Mr. Franks suffered from disabling limitations due to his back pain during the relevant period. Relatedly, Mr. Franks argues that he suffers from a loss of brain function. However, he again bases this assertion on medical records not available to the ALJ. The ALJ cannot make determinations on information not in the record.

Mr. Franks similarly argues that the ALJ ignored evidence of knee pain and knee surgery in finding that his knee pain was a non-severe impairment. The ALJ found that although Mr. Franks complained of knee pain, he had full range of motion with no swelling. (Tr. 18). The ALJ also noted that Mr. Franks claimed he had two knee surgeries prior to the alleged onset date, but the ALJ found that his physical examination during the relevant period was normal. Finally, the ALJ stated that there was no imaging taken of the left knee, and there was no evidence of surgery during the relevant period. Because his medical treatment was minimal, the ALJ found the left knee pain to be a non-severe impairment. (Tr. 18). While the medical record does show that Mr. Franks had surgery on his left knee in 2009, the ALJ properly relied on the evidence during the relevant time period in finding that Mr. Franks' knee pain was not a severe impairment. There is no evidence that Mr. Franks' knee pain caused functional limitations during the relevant time period. The ALJ correctly supported his decision in finding that Mr. Franks had minimal

6

treatment and normal physical examinations during the relevant period.

Mr. Franks then asserts that the ALJ improperly found that he quit work in order to care for his parents. The regulations define disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment," and therefore his reasoning for quitting work is at least relevant to the discussion. 42 USCS § 423(d)(1)(A). Mr. Franks does not deny that he did, in fact, quit his job in order to care for his parents. Mr. Franks asserts that his mother asked him to care for her because she knew how much he was struggling at work due to his impairments. While the ALJ does repeatedly mention that Mr. Franks quit work due to reasons other than his impairments, the ALJ also fully discussed the impairments and considered their impact on his ability to work. The ALJ properly included a discussion of why Mr. Franks quit working as just one of many factors in discussing whether or not he is disabled as defined by the regulations.

Mr. Franks then takes issue with the veracity of portions of the medical record, where he asserts the consultative examiner did not correctly hear him or correctly report his depression or pain. However, the ALJ can only review the evidence in the record. The Court will not overturn the ALJ's decision because the claimant asserts a doctor did not correctly notate his symptoms. The ALJ must work with the evidence in the record and cannot read into information that isn't available to him. Mr. Franks does not allege any error on the part of the ALJ, and therefore there is nothing for the Court to review. Mr. Franks makes a similar argument in regard to the ALJ's notation that he refused cardiac rehab. Mr. Franks asserts that the physician mischaracterized rehab and called it cardiac counseling, and that he refused counseling, not rehab. Again, the ALJ can only review the medical evidence in the record, and Mr. Franks' memory of conversations with the physician is not enough to overturn the ALJ's reliance on the evidence in the medical

7

record.

Mr. Franks alleges that the ALJ erred in stating that Mr. Franks was unable to leave his house due to his parents' care, and not because his impairments kept him at home. He alleges that the ALJ failed to take into account his depression, exhaustion, shortness of breath, and pain. Mr. Franks asserts that the ALJ did not consider his depression or anxiety at all in the decision. This is inaccurate. First, the ALJ noted that Mr. Franks told physicians that he could not leave his parents unsupervised, and that is why he rarely leaves home. (Tr. 20, 1187-88). Second, the ALJ did consider Mrs. Franks' depression and anxiety. In fact, the ALJ fully discussed all four components of the paragraph B criteria at Step 2. (Tr. 18-20). The ALJ spends two pages detailing Mr. Franks' allegations, as well as the evidence in the medical record. The ALJ then found that Mr. Franks' mental impairments were non-severe, as he had no more than mild limitations in any of the four functional areas. (Tr. 20).

Next, Mr. Franks takes issue with the entirety of the RFC, alleging that he cannot do anything as listed in the RFC. Mr. Franks alleges that the ALJ only presented medical records that would support a denial. However, on this argument, Mr. Franks has not provided "arguments supported by legal authority and citations to the record," which he was required to do, even as a *pro se* litigant. *Cadenhead v. Astrue*, 410 F. App'x 982, 984 (7th Cir. 2011). Thus, his generalized assertion concerning the ALJ's failure to adequately consider his limitations is not sufficient to challenge the adverse ruling. *Id.*

Mr. Franks further alleges that the ALJ failed to consider his second function report, stating that his first function report was not an accurate representation of his limitations. However, the ALJ referenced both function reports in describing Mr. Franks' alleged impairments, subjective symptoms, and daily activities. (Tr. 22). Mr. Franks also alleges that his

impairments have worsened, resulting in new diagnoses; however, this information is not in the medical record. There is no evidence that these impairments caused disabling limitations that started during the relevant period.

     Mr. Franks next alleges that the ALJ erred in describing his hobbies. The ALJ noted that in his function report, Mr. Franks stated that his hobbies including home repairs (as needed), cooking, and woodworking and fishing, both of which he seldom does now. (Tr. 22). This is an accurate representation of what is stated in his function report. (Tr. 217). Therefore the ALJ did not err in describing his hobbies. Similarly, Mr. Franks alleges that the ALJ misstates how often he spends time with his family. The ALJ did, in fact, misstate the frequency with which Mr. Franks spends time with his family. The ALJ stated that Mr. Franks spent full days visiting with his family once or twice a week, when in fact Mr. Franks stated in his function report that he spends full days visiting with his family once or twice a month. (Tr. 22, 217). However, this is not a fatal error. The ALJ relies on multiple pieces of evidence from a variety of sources in finding that Mr. Franks is not as disabled as alleged. The ALJ does not solely rely on this small portion of the function report.

     Mr. Franks further argues that the ALJ improperly found that Mr. Franks is able to maintain hygiene. He alleges that he only showers once a week and wears the same clothes for three to four days in a row. However, the ALJ properly relied on Mr. Franks' function report in finding that Mr. Franks is capable of maintaining personal hygiene, but that he does become winded while performing personal hygiene activities. (Tr. 22, 214). Mr. Franks once again does not point to anything in the record, and more importantly, nothing during the relevant time period, to indicate he was incapable of maintaining personal hygiene during the relevant time period.

Mr. Franks also makes multiple arguments regarding the hearing transcript. He alleges that the transcript does not accurately reflect what he remembers being said at the hearing. However, the ALJ accurately discussed what was said at the hearing. The Court can only look at the evidence in the record, and the ALJ accurately discussed what was said at the hearing as reflected in the transcript. Mr. Franks' assertion that the transcript is not accurate is not something that can be proven or disproven based on the evidence in the record, which supports the ALJ's decision. In a similar argument, Mr. Franks clarifies that although he testified that he could walk for 45 minutes with stops to rest every two blocks, he must rest for up to ten minutes due to his back pain, neck pain, and shortness of breath. The ALJ properly noted that he could walk for 45 minutes with stopping every two blocks, but the ALJ further explained that Mr. Franks alleged decreased energy, fatigue, dizziness, and shortness of breath. (Tr. 23). The ALJ did not err in relying on the medical evidence and the hearing transcript. Mr. Franks continues by arguing that although he testified that he could lift up to 25 pounds, he only does this once or twice a week, and that the process is exhausting. However, at the hearing, Mr. Franks simply stated that he could lift up to 20 or 25 pounds, and the ALJ properly found that Mr. Franks could perform light work. (Tr. 21-22, 55). Light work requires lifting and carrying 20 pounds occasionally and 10 pounds frequently, which is not inconsistent with Mr. Franks' hearing testimony. The ALJ did not err in relying on the information before him in the medical record.

Mr. Franks continues by arguing that although the ALJ acknowledged the arthritis in his back, his condition has worsened to the point of multiple new diagnoses. The ALJ cannot make determinations about medical evidence not in the record, nor about evidence from after the date last insured that does not indicate disability starting during the relevant period. The ALJ properly discussed and evaluated all of Mr. Franks' alleged impairments that existed during the relevant

period.

Mr. Franks further alleges that the ALJ erred in stating he told doctors that he was able to climb stairs. Mr. Franks points to a few treatment notes, which are either outside of the relevant period or they otherwise do not mention anything about Mr. Franks' ability or inability to climb stairs. (Tr. 1216, 1238). The ALJ properly noted that during the relevant period, Mr. Franks stated that he was able to walk up stairs. (Tr. 23, 776). The ALJ did note that Mr. Franks struggled with endurance while walking and limited him to only occasional climbing of stairs in the RFC. (TR. 22, 24). Mr. Franks has not pointed to any medical records from the relevant period that states he cannot climb stairs. Similarly, Mr. Franks takes issue with the ALJ noting that he reported walking thirty minutes a day and tolerating it well. (Tr. 24, 1187). However, the treatment note does state that Mr. Franks tolerated walking for thirty minutes a day. (Tr. 1187). Moreover, the ALJ does not solely rely on this one piece of medical evidence. The ALJ also noted that Mr. Franks had difficulty with endurance while walking, as well as needing to rest every two blocks. (Tr. 23-24).

Mr. Franks next asserts that the ALJ erred in discussing the opinion of Nurse Practitioner Kathleen Long and argues that her use of boiler plate language should render her opinion worthless. However, the ALJ gave this opinion little weight, noting that despite her statements, Mr. Franks did have severe impairments. (Tr. 24). Therefore, Mr. Franks' argument regarding Kathleen Long using boilerplate language is unnecessary. Regardless of what she stated, the ALJ provided her opinion little weight. Therefore, Mr. Franks was not harmed by her use of boilerplate language.

Mr. Franks also takes issue with the ALJ's reliance on the state agency physicians, who opined that Mr. Franks could perform light work with occasional postural limitations, except that

11

he is never to climb ladders, ropes, or scaffolds and is to avoid all exposure to hazards. (Tr. 24, 79-80, 92). The ALJ gave the state agency physicians' opinions great weight, finding them consistent with both the medical record and Mr. Franks' admissions. Mr. Franks asserts that the state agency physicians relied only on his first function report and one appointment from shortly after the consultative examination, which isn't a proper representation of his impairments. However, the state agency physicians had multiple medical reports from 2016, and they did not solely rely on Mr. Franks' function report in making their RFC decision. (Tr. 79- 81, 92-94). The state agency physicians relied on hospital records and progress notes to find that Mr. Franks was capable of light work with limitations. (Tr. 81, 93-94). The state agency physicians did not rely solely on Mr. Franks' function report, and Mr. Franks provides no evidence to discount the state agency physician's opinion. The ALJ did not err in relying on the state agency physician opinions.

      Mr. Franks next argues that the ALJ erred in stating that he refused to use a CPAP. Mr. Franks asserts he uses a BiPAP, not a CPAP, and that he has been 100% compliant since day one. He relies at least partially on evidence not in the record to support his claim, and the Court cannot review evidence not in the record. Mr. Franks is correct in noting that he used a BiPAP machine and not a CPAP machine. The ALJ erred in calling it a CPAP, but this error is not fatal. The ALJ notes that Mr. Franks refused to use his BiPAP machine, and the medical record confirms that Mr. Franks refused to use his BiPAP in April 2018. (Tr. 25, 1164). However, as Mr. Franks correctly points out, there is evidence in the record from July 2018 that states Mr. Franks was 100% compliant with his BiPAP. (Tr. 1312). Regardless, the ALJ did not rely solely on his refusal to use his BiPAP, and the ALJ properly supported his decision with medical evidence in the record. The ALJ only noted Mr. Franks' refusal to use his BiPAP once as part of

a large paragraph of evidence supporting his claim that Mr. Franks' was not as disabled as he alleged. (Tr. 24-25).

Mr. Franks' next argument is also unavailing. He argues that the ALJ contradicts himself in finding that Mr. Franks suffered from severe impairments at step 2, yet he found that the impairments did not preclude Mr. Franks from completing basic work activities during the RFC discussion. (Tr. 17, 25). However, a finding of severe impairments does not automatically result in a finding of disability. A severe impairment, defined as an impairment which significantly limits a claimant's ability to perform basic work activities, need not render a claimant completely unable to perform basic work activities. SSR 85-28. While Mr. Franks is limited in his ability to perform basic work activities, he is not unable to complete basic work activities. The ALJ properly provided for Mr. Franks' limitations in his ability to perform basic work activities in the RFC.

Finally, Mr. Franks disagrees with the ALJ's statement that his treatment has been conservative. (Tr. 25). Mr. Franks once again relies on evidence after his date last insured, as well as evidence not in the record. He asserts that contrary to the ALJ's assertion that his treatment has been conservative, he has had physical therapy, psychological therapy, CT scans, cortisone shots, tonsils removed, sleep treatment, and treatment for depression. However, much of that evidence occurred after the date last insured. Mr. Franks does not point to any treatments during the relevant period that were anything other than conservative. The ALJ properly relied on the medical records from the date last insured and found that Mr. Franks had conservative treatment during the relevant period.

Mr. Franks argues that the ALJ ultimately failed to develop a full and fair record, and that the ALJ ignored evidence from before and after the relevant period. However, Mr. Franks was

13

represented at the hearing, and the ALJ reviewed all portions of the record, including evidence outside of the relevant time period. While Mr. Franks is frustrated with the disability determination process, the Court cannot reweigh evidence. The ALJ has supported his decision with the evidence in the record. Mr. Franks continually relies on evidence not in the record that occurred after the date last insured.

## CONCLUSION

For those reasons, the Court AFFIRMS the Commissioner's decision. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: October 23, 2020

                                          /s/ JON E. DEGUILIO
                                          Chief Judge
                                          United States District Court